THE STATE, ETC., on the relation of CHARLES E. ALTER, praying for a Mandamus, *v.* THE JUDGE OF THE FOURTH DISTRICT COURT OF NEW ORLEANS.

When a judge of an inferior court refuses to decide on the rights of litigants, this court cannot issue the mandate applied for to secure its appellate jurisdiction; nor when he decides adversely to the pretentions of a party. The reasons which he may give for his judgment cannot give this court original jurisdiction.

Our jurisdiction is only appellate, and we cannot correct, except on appeal, the judgments of other courts. Contstitution, Art. 70.

The legislature has provided the manner by which an appeal may be taken. It is not by *mandamus.*

APPEAL from the Fourth District Court of New Orleans, *Theard, J.*

*Elmore and King for relator.*—This application is based upon the refusal of the District judge to allow the plaintiff to bond sequestered property, after the time allowed by law for the defendant to bond had expired.

The history of the case is briefly as follows :

A suit was instituted in the Fourth District court by *Moore & Browder for the use of Charles E. Alter* v. *J. B. Bres.* On this suit, sixty-four bales of cotton were sequestered. A motion was made by Moore & Browder, the nominal parties, to dismiss the suit, so far as they were concerned, alleging that a certain advantageous arrangement had been made by them with one Waltman.

Notice of this motion was given to Elmore & King, the counsel, who originally brought the suit and represented the interest of Alter. This motion was fixed for a hearing on Saturday, the 25th of November, 1865. On Friday, the 24th, the counsel for Alter moved the court for permission for Alter to bond the property sequestered. This order was granted, and Alter bonded the cotton.

On the opening of the court, on Saturday morning, the defendant, upon various grounds, stated in the record of appeal, in the case of *Moore & Browder, for the use of Alter* v. *Bres,* on file in the Supreme Court, moved the court to rescind the order of the day before granting to Alter the privilege of bonding the cotton.

The trial of this motion was suspended until after the other business of the court for the day was disposed of. In the meantime, the motion made by Moore & Browder was taken up and tried, and taken by the court under advisement. The motion to rescind the order to bond was then taken up ; and, after argument on the part of plaintiff, the court ordered the previous order to bond to be rescinded, and ordered the sheriff to re-possess himself of the cotton ; which he did. To which the counsel for Alter objected, and took a bill of exceptions.

The court then proceeded to decide the motion made by Moore & Browder, and ordered the suit to be dismissed.

Alter then applied for a suspensive appeal from both these decisions. The judge granted a suspensive appeal from the order dismissing the suit, but refused it upon the order rescinding the previous order to bond; stating for a reason, that he considered the appeal granted, as embracing both orders.

After these proceedings, the counsel for Alter made a new application to bond, which was refused by the court, upon the ground that an appeal had been granted by the court, and that the case was no longer within its jurisdiction or control. To which ruling of the court, the counsel for Alter excepted and tendered a bill of exceptions, which was signed.

In this ruling upon the last motion, we think the judgment of the court was clearly erroneous. The right of the plaintiff to bond was a right altogether disconnected with and independent of the merits of the case. He possessed this right from his position as a party litigant, and was entitled to exercise it, even if it were morally certain that he would eventually be cast in the suit. Suppose that, on the very day a suit was brought and property sequestered, the defendant, confident of his case, went to trial, and judgment was rendered against him, from which he took a suspensive appeal; can any one doubt that he might still exercise his privilege of bonding ?

The detention of the property necessarily caused by the appeal might, in such a case, be the very motive for bonding it.

If, in the case supposed, the defendant would have the right to bond, it is equally clear that the plaintiff would have the same right, after the lapse of ten days. There is no limit fixed by the law within which the application to bond must be made. After the lapse of ten days the right of the plaintiff to bond becomes absolute, and exists so long as the suit lasts, if there be a necessity for its exercise.

The right of a party in a sequestration to bond is strongly analogous to the similar right in cases of attachment.

The defendant may, in every stage of the suit, have the attachment set aside, by giving bond as required by law. C. P. Art. 259.

The plaintiff, in a sequestration case, has the same right, after the ten days have elapsed.

The effect of the suspensive appeal, in this case, was to place parties in the situation they were before the judgment was rendered. As the plaintiff had the right to bond before the judgment, he had the same right after the appeal.

These positions are sustained by authority. In the case of *Sighers* v. *Antheman*, 1 N. S. p. 74, it was held that: "Pending an appeal from a judgment revoking the power of an attorney for absent heirs, his power is retained." The court says: "The propriety of this revocation is now before us in another case; and, we are of opinion, cannot be examined in this, until a decision be given confirming the judgment of the court of the first instance, the attorney stands here with all the powers originally conferred on him."

STATE
v.
JUDGE 4th D. C.

"Plaintiff in injunction is entitled to the protection of the court, so long as the matter in controversy is undetermined; and a suspensive appeal from a judgment, dissolving the injunction with damages, has the effect of maintaing the case in the position it was in before such judgment." *State ex. rel. Walden* v. *Judge*, 19 L. R. 167; *City Bank* v. *Walden*, 1 R. R. 181.

"A creditor's right to exercise any legal remedy for the recovery of his debt cannot be considered as suspended by an appeal on a matter purely incidental and not inconsistent with the remedy he seeks to enforce; so an appeal from the dissolution of an injunction against executory process for want of notice of seizure and proper advertisement will not prevent the creditor from returning the process and proceeding under an alias writ." *Wright* v. *Rousselle*, 6 A. R. 73.

An appeal presents no obstacle to the determination of questions arising subsequent to such appeal. *State* v. *Hamel*, 6 A. R. 257.

Upon these authorities we say that, as the right of the plaintiff to bond the property was independent of the merits of the case; and, as the suspensive appeal from the judgment dismissing the suit placed parties *statu quo*, an application to bond, made after the appeal, could not be refused on account of that appeal. The very fact of the appeal and the length of time the property would be held by the sheriff made the plaintiff the more desirous of exercising his legal right. The right to bond was a conservatory act, rendered more necessary by the appeal. As we could not appeal from the refusal of the judge to allow us to bond; or, even if we could, the delay would destroy the value of the right to bond, no other relief was left to us but to apply for a *mandamus*.

We consider the refusal of the judge to allow us to retain the property we had bonded under his order, and his subsequent rescinding that order and directing the sheriff to retake the property, as equally erroneous and detrimental to the plaintiff's rights. The judge considers that matter before the Supreme Court on the appeal. How could it be, when the record shows that he ordered the sheriff to take immediate possession of the property, and that the order was executed. After this, it was idle to tell us, he would grant a suspension appeal. A suspension appeal from what? What was suspended by the appeal?

Not the order directing the sheriff to retake the property, for that order had already been executed. He grants us a suspension appeal from a judgment after that judgment had already been executed, somewhat analogous to the proceeding of granting a new trial after the convict had been hung. It is true the propriety of his orders may be inquired into on the appeal on the merits of the case; but this affords us no adequate relief for his refusal to allow us the exercise of a plain legal right, and delaying us until the right became worthless; especially when this is done upon grounds wholly illegal and erroneous.

The reason assigned by the judge for rescinding the order to bond, was that the order was granted during the pendency of the motion made by Moore & Browder, the nominal plaintiffs.

That motion was not, as the judge erroneously supposed, a motion to dismiss the suit, but merely to dismiss it, so far as they were concerned, without prejudice to Alter's rights.

Now, as the nominal plaintiff had no concern or interest in the suit, the granting of their motion could not have affected the suit. Our objections to the motion were, that it seemed to imply a right on the part of the nominal plaintiffs to interfere with the prosecution of the suit, and the granting of it might have been supposed to have produced the necessity of changing the title of the suit. This could not have been done without producing great confusion in the docket.

In our answer to the motion, we denied the right of the nominal plaintiffs to make any such motion, or to interfere in any manner with the suit. But as it was apparent the nominal plaintiffs had no interest in the suit, we had no objection to an entry to that effect being made upon the minutes. We contend that the pendency of such a motion formed no barrier to the plaintiff's exercising his legal right to bond. It certainly did not prevent the defendant from bonding. He was not even notified of the motion.

If it be said that the defendant was deceived by the motion and lulled into a false security, thinking there was no necessity for his bonding; we reply that "*ignorantia legis neminen excusat.*" He is presumed to have known that the nominal plaintiff had no right to make the motion, or even if it had been granted in the very terms used, it would not have interfered with the rights of Alter, the real plaintiff. The nominal plaintiffs never had the right to bond the property sequestered for themselves. Their motion to dismiss the suit so far as they were concerned, could not be considered, therefore, as a waiver of the right of Alter. There was nothing in the motion which, by any kind of implication, could impair Alter's right to bond, or which interfered in any manner with the defendant's exercising that right, if he had chosen so to do. It would be monstrous, if a party, who upon the face of the papers had no interest, or right to interfere with the suit, could upon his mere motion deprive the plaintiff of the exercise of his plain legal rights! It would be still more deplorable, if this mere nominal party was instigated and hired by the defendant to make the attempt thus to interfere in the suit, and to take advantage of his own wrong. Moore & Browder acknowledge in their motion, that they make it because Waltman, the owner of the cotton, had made an arrangement with them to dismiss the suit. We therefore conclude that the motion of Moore & Browder, the nominal parties, to dismiss the suit so far as they were concerned, without prejudice to the rights of Alter, the real plaintiff, form no bar to Alter's bonding the property, and that the order of the court rescinding the previous order to bond was illegal and unauthorized.

From this statement of the case, as it appears from the record, it is difficult to divine the considerations that influenced the court. The solution will probably be found in his subsequent judgment dismissing the suit altogether.

It will be seen that the judge did not confine himself to the motion made, which was to dismiss the suit so far only as Moore & Browder were concerned, "without prejudice to the right of C. E. Alter to prosecute his demand as he may deem fit," but dismissed the suit altogether. No reason is assigned in the record by the judge for this extraordinary decision. He stated orally that he considered Moore & Browder had the

right to dismiss the suit. In this decision the authorities show he was altogether mistaken. *Suits for use, &c.*

"But courts of equity have long since totally disregarded this nicety. They accordingly give effect to assignments of trusts, and possibilities of trusts, and contingent interests, whether they are in real or in personal estate, as well as to assignments of *choses in action.*

Every such assignment is considered in equity as in its nature amounting to a declaration of trust, and to an agreement to permit the assignee to make use of the name of the assignor in order to recover the debt or to reduce the property into possession." 2 Story's Eq. p. 305, sec. 1040. See also marginal references.

The practice in courts of equity was derived from the civil law, and assimilates very nearly to our own.

Our own courts have accordingly held similar and stronger doctrines in reference to such actions.

"In a suit by A, for the use of B, the latter is the real plaintiff, of whom the court and the defendant are bound to take notice." Herman's Digest, p. 1124, sec. 6. Also *Davis et al.* v. *Taylor*, 4 N. S. 135. The very language adopted in the above principle is extracted from this decision.

The case of *McNair* v. *Thompson*, 5 M. R. 561, was a suit by Fowler for the use of McNair, on a contract of affreightment made by Fowler with Thompson. The Supreme Court in deciding the cause say: "Thus, if McNair should come forward, without the assistance of Fowler, he would be without any right. But Fowler's declaration that he sues for the use of McNair, amounts to a relinquishment and transfer of his own right in his favor, and is considered as sufficient to enable McNair to appear in this case as the real plaintiff."

*Dicks et al.* v. *O'Connor*, 5 M. R. 549.—If the nominal plaintiffs had an absolute right to compel payment, it is immaterial whether it is exerted in their own right and for their own use, or in their own right for the use of their transferree.

*Filhiol* v. *Jones et al*, 8 M. R. 635. The court held : "Suit may be brought on a note not negotiable in the name of the payee for the use of the transferree."

*Dayton* v. *Commercial Bank*, 6 R. R. 17. "In an action by one for the use of another, the latter is the real plaintiff."

*Rawle, for the use of Russel*, v. *Skipworth et rex*, 19 L. R. 240. "The plaintiff, by bringing suit on the assignment and claiming the benefit of it, has ratified and confirmed the condition on which it was made." * * "The legal title is in Rawle, and he may sue for the use of whom he pleases."

In the suit before the court, the action was brought for the use of Alter; judgment was asked for the use of Alter. The action was brought to enforce the specific performance of a contract between Moore & Browder and one Waltman. Prior to the filing the suit, this right of action existed in Moore & Browder. The filing of the suit for the use of Alter was a complete transfer and assignment to him of all the rights of Moore & Browder in the contract and in the suit. The appearance of Alter in the suit was an acceptance and ratification of the transfer of all the rights of Moore & Browder. This transfer carried with it the right to prosecute

the suit as it then stood, and to continue the use of the name of the transferrees, who became mere nominal parties. The moment the suit was filed, the rights of Moore & Browder ceased, and those of Alter took their place, just as *la mort saisit le vif*. This transfer, on the part of Moore & Browder, could not be revoked by them in any of its parts. The consent to use their name could not be recalled. Alter incurred expenses and responsibilities upon the faith of the transfer, and acquired rights of which he could not be divested by Moore & Browder.

Where suits are transferred after the action has been brought, the suit is still prosecuted by the original title, although the nominal plaintiff, as a matter of record, has no interest in the suit. A change of title would involve the records of the court in inextricable confusion. It should never be allowed by the courts.

The foregoing principles of law, governing actions by one for the use of another, have been so long recognized, and so often applied, that it is not without surprise that we are called upon, in this case, to make an argument to show that Alter is the real plaintiff, and as such had the sole right to exercise the rights of plaintiff. Now, if Alter was the plaintiff, his first motion to bond the property was the exercise of his undoubted right.

The order rescinding the previous order to bond was illegal and unauthorized. The delay caused by an appeal will destroy the value of this legal right to bond. Is the plaintiff to be denied the exercise of his legal right, because a judge will perversely insist that he is not the plaintiff, when the record shows that he is ? Are we to have forced upon us a party as plaintiff, when the record shows on its face that the party is not the plaintiff ? Are we to be told that a judge, by closing his eyes to all the lights of reason and of law, can make the fictitious control the true, the nominal the real, the shadow the substance, and thereby deprive a party of his unquestionable legal rights ; and that there is no remedy but one, which is so slow in its operation as to defeat and destroy the value of the right ?

We humbly submit that this cannot be in a land where law and justice are administered.

We think the party is entitled to a *mandamus*, compelling the judge to allow him to exercise his right to bond, on either of his applications for that purpose. Let us inquire in what cases will a *mandamus* be granted.

*Mandamus.*—" The object of this order is to prevent a denial of justice, * * and it should therefore be issued in all cases where the law has assigned no relief by the ordinary means, and where justice and reason require that some mode should exist of redressing a wrong or an abuse of whatever nature." C. P. Art. 830.

" This order may be issued at the discretion of the judge, even when a party has other means of relief; if the slowness of ordinary legal forms is likely to procure such a delay that the public good and the administration of justice will suffer from it."

A *mandamus* will be granted to compel a district judge to sign a bill of exceptions. C. P. Art. 900.

STATE          Also to compel a probate judge to entertain an application to appoint
JUDGE 4th D. C. an under tutor and convoke a family meeting.  14 L. R. 483.  7 A. R.
184.

So to compel the judge to act when delay would produce injury and in-
justice.  4 R. R. 48.

So even in matters of discretion, where there is a clear abuse of dis-
cretion, tending manifestly to thwart justice and frustrate the right of ap-
peal.  7 A. R. 126,

Also to compel a judge to try a cause.  4 R. R. 227.

Also to compel a judge to grant an appeal.  3 M. R. 184.

Also to compel the issuance of execution in certain cases.  11 L. R.
368.

Also to comply with mandate of the Supreme Court.  6 R. R. 92.

Also to prevent unreasonable delay.  13 A. R. 481.

The right of a plaintiff to bond sequestered property, after ten days
have elapsed, and the defendant has made no application to bond, is fully
guaranteed by the law.  R. S. p. 95, § 13.

The court has no discretion to refuse him this privilege, and might as
well debar him from the right of appeal, or any other right secured to a
party litigant.

The plaintiff is denied the exercise of this clear legal right, over which
the district judge has no discretion.  The delay of an appeal is as fatal to
him as the absolute denial of the right.  This is precisely the case for a
*mandamus*, pointed out by the articles of the Code of Practice, above
quoted.

The theory of the judge is, that Moore & Browder are the plaintiffs
who have the control of the suit.  That Alter has no rights as plaintiff,
not even to bond the cotton.  Upon this theory, Alter is compelled to
abide the action of Moore & Browder, and can do nothing without them
or contrary to their wishes.  If the judge had carried out his theory, he
should have refused the appeal he granted to Alter.  Suppose he had
done so, could any one doubt that, on an application for a *mandamus*,
the Supreme Court would have compelled him to have allowed an appeal
to Alter?  The right of Alter, as plaintiff, to bond the cotton is equally
as clear as his right to appeal in the supposed case; and he is as justly
entitled to a *mandamus*.

We ask for a *mandamus* upon both the grounds stated in this brief.
1. On his refusal to grant the last application to bond, which is, perhaps,
the clearest one.  2. Upon his refusal to allow us to hold the property
under the first order and the bond given.

The *mandamus*, we think, may justly be awarded to us on either
ground.

HYMAN, C. J.  The relator complains that the judge had, by an order,
rescinded a prior order of his court, granting to him, relator, permission
to bond the cotton sequestered in the case of *Moore & Browder for the use
of C. E. Alter* v. *J. B. Bres*, and had moreover directed the sheriff to take
possession of the cotton after he (relator) had bonded it; and that,
subsequent thereto, the judge had refused, on a motion made by relator,
permission for him to bond it.

The relator applies for a writ of *mandamus* to compel the judge to permit him to bond the cotton.

When a judge of an inferior court refuses to decide on the rights of litigants, this court cannot issue the mandate applied for to secure its appellate jurisdiction; nor when he decides adversely to the pretentions of a party. The reasons which he may give for his judgment cannot give this court original jurisdiction.

Our jurisdiction is only appellate, and we cannot correct, except on appeal, the judgments of other courts. Const. Art. 70.

The legislature has provided the manner by which an appeal may be taken. It is not by *mandamus*.

*Mandamus* refused.